UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMELIGHT, INC.,<br><br>            Plaintiff,<br><br>   v.<br><br>DMITRY SHKIPIN, et al.,<br><br>            Defendants. | Case No. 22-cv-03119-PCP<br><br>**ORDER DISMISSING COUNTERCLAIMS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 17, 28 |

Plaintiff/Counter-Defendant HomeLight, Inc. operates an online platform that matches real estate agents with homebuyers and sellers and requires any agent who accepts a referral resulting in a sale to pay 25% of their commission to HomeLight. Defendant/Counter-Plaintiff Dmitry Shkipin operates an alternative agent-matching platform, HomeOpenly, that does not charge referral fees and instead obtains revenue from advertising and auxiliary services. In response to HomeLight's false advertising and trademark lawsuit, Mr. Shkipin has asserted counterclaims under federal antitrust law, federal false advertising law, and California's Unfair Competition Law. HomeLight now moves to dismiss these claims under Rule 12(b)(6). For the reasons set forth herein, HomeLight's motion to dismiss is granted with leave to amend. Mr. Shkipin's amended countercomplaint, if any, is due within 21 days of the filing of this Order. As the Court emphasized at the hearing on HomeLight's motion, however, Mr. Shkipin should file an amended countercomplaint only if he is able to address the legal and factual omissions that render the existing countercomplaint insufficient.

**I.      Background**

HomeLight, Inc. filed this action against Mr. Shkipin and his business, HomeOpenly, Inc., in May 2022. Both HomeLight and HomeOpenly operate platforms that match real estate agents

with homebuyers and sellers. HomeLight alleges that Mr. Shkipin and HomeOpenly have published false and misleading claims about HomeLight, including that it engages in illegal price fixing, violates other state and federal laws, and misleads the public. HomeLight also alleges that HomeOpenly misuses HomeLight's logo and uses a logo that is confusingly similar.

Mr. Shkipin moved to dismiss these claims and to dismiss HomeOpenly, Inc. (since dissolved) as a party. The Court denied both motions. Mr. Shkipin thereafter filed a second motion to dismiss, which was also unsuccessful.

On June 18, 2022, Mr. Shkipin filed a countercomplaint against HomeLight asserting claims under the Sherman Act, the Lanham Act, and California's Unfair Competition Law. The countercomplaint alleges that, in assembling a referral network of real estate agents that have partnered with HomeLight and agreed to pay referral fees, HomeLight has illegally stifled competition, restrained trade, and enticed consumers to use its services with a series of false claims about how its referrals are made and paid for. Mr. Shkipin sought to enjoin HomeLight's operations until these counterclaims could be resolved, but the Court denied his preliminary injunction motion on August 11, 2023.

HomeLight now moves to dismiss Mr. Shkipin's counterclaims.

**II.    Legal Standard**

HomeLight seeks to dismiss Mr. Shkipin's counterclaims for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to Mr. Shkipin, the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must nonetheless allege facts that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Legal conclusions "can provide the complaint's framework," but the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

### III. Mr. Shkipin's Countercomplaint Fails To State a Valid Claim for Relief.

Mr. Shkipin's allegations are based, in part, on his contention that HomeLight's operations violate Section 8 of the Real Estate Settlement Procedures Act (RESPA) and corresponding federal regulations. In particular, Mr. Shkipin claims that HomeLight's receipt of 25% of the commissions earned by agents who accept referrals violates RESPA's prohibitions on kickbacks and unearned fees paid in connection with federally related mortgages, and that, because HomeLight allegedly does not act as a brokerage, it does not fall into RESPA's exemption for "cooperative brokerage and referral arrangements or agreements between real estate agents and brokers." *See* 12 U.S.C. § 2607(c)(3). As Mr. Shkipin recognizes, however, his countercomplaint involves claims that are "entirely separate" from RESPA. ECF No. 30, at 17. Indeed, Mr. Shkipin concedes that he does not have standing to assert claims directly under RESPA and the corresponding federal regulations.

Accordingly, the question before the Court on HomeLight's pending motion is not whether RESPA prohibits the kind of payments HomeLight receives from referred agents, whether HomeLight's business model is lawful as a general matter, or whether HomeLight takes advantage of potential antitrust violations by other players in the real estate landscape. Instead, the sole issue is whether Mr. Shkipin's countercomplaint includes plausible factual allegations establishing that HomeLight has violated the specific federal and state laws under which his counterclaims arise. It does not.

#### A. Mr. Shkipin Fails To Allege that an Unreasonable Restraint of Trade Has Caused Him Antitrust Injury.

Mr. Shkipin alleges in Count 1 that HomeLight has violated Section 1 of the Sherman Act, which prohibits "[e]very contract, combination …, or conspiracy, in restraint of trade." 15 U.S.C. § 1. This language sweeps broadly but, as relevant here, any plaintiff must establish two specific requirements to state a valid Section 1 claim. First, Section 1 only applies to "unreasonable restraints of trade effected by a 'contract, combination… or conspiracy' between *separate* entities. It does not reach conduct that is 'wholly unilateral.'" *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984). Second, because "'restraint of trade' has been interpreted to mean 'undue

restraint,'" Section 1 prohibits "only unreasonable restraints." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). An agreement might violate other laws like RESPA without unreasonably restraining trade, or it might be otherwise perfectly legal but nonetheless violate Section 1.

Accordingly, to establish a Section 1 violation here, Mr. Shkipin must first plausibly allege that HomeLight entered into an agreement with another party or parties, as opposed to engaging in merely unilateral conduct. Second, he must show that this agreement unreasonably restrained trade. Some agreements—like those fixing prices, rigging bids, or allocating markets—are "so plainly anticompetitive" that they are considered per se unreasonable. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). For other agreements, courts must decide whether the restraint of trade is unreasonable by applying the "rule of reason" and analyzing the specific facts and the structure of the market at issue to determine how the restraint actually affects competition. In rule-of-reason cases, "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers." *Am. Express*, 138 S. Ct. at 2283. The simplest way to show such effects is with direct evidence: "proof of actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market." *Id.* at 2284. Anticompetitive effect can also be shown indirectly if the defendant has market power. *Id.*

### 1. Mr. Shkipin Does Not Plead an Unreasonable Agreement Between HomeLight and Partner Agents.

The first agreement that Mr. Shkipin alleges violates Section 1 is HomeLight's explicit referral agreement with each of its partner agents. The separate parties are HomeLight on one side and an individual partner agent on the other. The one-page agreement, attached as Exhibit I, specifies that if HomeLight sends a client to an agent who then closes a transaction, the agent agrees to pay HomeLight 25% of the gross commission from the sale.

Mr. Shkipin calls this a "price-fixed blanket referral agreement[]," but he does not plead facts establishing a per se horizontal price fixing violation. To start, even though HomeLight is a licensed brokerage, in the context of this agreement HomeLight and agents are not acting as horizontal competitors agreeing to charge customers the same price for a service they both offer. If HomeLight had agreed with a competing network like Zillow or Redfin to each charge agents the

4

*same* referral fee, that would clearly be horizontal price fixing and a per se violation. *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1144 (9th Cir. 2003) (finding per se price fixing when eleven Multiple Listing Service operators agreed to charge subscribers the same support fee). But, as pleaded in Mr. Shkipin's countercomplaint, HomeLight's referral is better thought of as a vertical input to the partner agent's ultimate sale. The fee is simply the price of that input. *See PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 833 (9th Cir. 2022) (characterizing real estate agents as "consumers" of inputs like listing network services). And unlike forms of vertical price fixing like "price maintenance agreements" in which suppliers set the lowest ultimate price that distributors can charge, HomeLight's referral fee does not specify the total commission an agent must charge. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007). Under the terms of the agreement as pleaded, agents can charge whatever commission they want, so long as they pay 25% to HomeLight.[1]

Because Mr. Shkipin has not plausibly alleged that the referral agreement is a per se violation, the agreement must be evaluated under the rule of reason. And because Mr. Shkipin does not allege that HomeLight has market power, Mr. Shkipin must plead facts that, if proven, would show "actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market." *Am. Express*, 138 S. Ct. at 2284.

The countercomplaint, however, does not identify such effects. Mr. Shkipin speculates that if agents did not agree to share commissions with HomeLight, they might instead "offer this same money as competitive savings to their clients." But the same could be said of any input to real estate agents' operations, and Mr. Shkipin does not plead that agents charge less in those instances where they do not partner with HomeLight. If real estate agents could obtain leads for free, if they didn't have to pay for advertising, or if multiple listing services didn't charge for access, it is certainly possible agents might lower their commissions. But the fact that HomeLight is putting a price—even a high price—on the leads it offers does not automatically establish that the

---

[1] Mr. Shkipin contended at oral argument that this agreement effects a market allocation between partner agents, but he has not pleaded any facts suggesting that the agents' simple agreement to pay HomeLight a fixed portion of their fee from any covered sale operates as a means for agents to avoid competing with one another within any particular market.

5

agreement hurts competition. As Mr. Shkipin acknowledges, agents who have signed the agreement with HomeLight are free to pursue leads on other platforms (including HomeOpenly, if HomeOpenly were to change its policies to allow them) or independently. And they are not required to accept leads that HomeLight provides.

The countercomplaint recognizes that agents choose to pay HomeLight's referral fee because they prefer the "certainty" offered by HomeLight's leads to the uncertainty of finding customers on their own. But the fact that agents are making this choice suggests that HomeLight is competing for agents' business rather than restraining competition. If HomeLight's fees are too high, that would seem to create rather than restrict opportunities for other platforms to provide a similar service at a lower cost. Mr. Shkipin argues that the entire real estate sector is "broken." And it is of course possible that the market for real estate leads is stifled, or that agents (legally or otherwise) are choosing not to compete on the basis of price, resulting in the relatively standard commissions Mr. Shkipin argues are too high. To establish a Section 1 violation, however, it is not enough to show that a market is not as competitive as it could be. Mr. Shkipin needs to establish that HomeLight's referral fee agreements with agents have directly resulted in identifiable harm to competition. His countercomplaint does not plead facts sufficient to make that showing.

### 2.     Mr. Shkipin Does Not Plead that HomeLight Served as the Hub for an Unreasonable Restraint of Trade Among Its Partner Agents.

Mr. Shkipin also suggests that there is an unlawful "hub and spoke agreement" arrangement between HomeLight and its network of agents. "A traditional hub-and-spoke conspiracy has three elements: (1) a hub, such as a dominant purchaser; (2) spokes, such as competing manufacturers or distributors that enter into vertical agreements with the hub; and (3) the rim of the wheel, which consists of horizontal agreements among the spokes." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015).

Mr. Shkipin identifies HomeLight as the hub and its partner agents as the spokes, so his claim turns on whether there is also a "rim"—a horizontal agreement among the partner agents resulting from their accumulated individual agreements with HomeLight. The countercomplaint does not specify what it alleges the rim to be, although it hints (and Mr. Shkipin's later briefing

6

confirms) that it considers the "monolithic" offering of "price-fixed 6% 'standard' commissions" to be the horizontal agreement constituting the rim. *See* ECF No. 30, at 15. But the countercomplaint does not identify how HomeLight, via its referral agreement or any other agreement to which it is a party, serves as the "hub" enabling purported collusion between agents to fix their commissions. Mr. Shkipin does not allege, for example, that HomeLight requires each of the agents in its network to charge the same standard commission, or that HomeLight excludes agents that charge lower commissions. Indeed, given his admission that the practice of charging standard commissions extends well beyond the agents who are a part of HomeLight's network, any such allegation would be highly implausible.

To be sure, Mr. Shkipin's countercomplaint alleges that HomeLight benefits from the "uniform" nature of commissions. It alleges that HomeLight openly describes the fact that customers "can expect to pay between 5-6% in agent commissions." It even alleges that HomeLight actively (but unilaterally) steers customers to agents that charge higher commissions. But none of these allegations establish that HomeLight itself has entered into an agreement that is responsible for any alleged collusion, coordination, or price-fixing among agents.

For these reasons, the countercomplaint does not plausibly allege a violation of Section 1.

### 3. Mr. Shkipin Has Not Alleged an Antitrust Injury.

In addition to failing to allege an agreement that unreasonably restrains trade, Mr. Shkipin's Section 1 claims suffers from another fatal flaw: lack of antitrust injury. A private plaintiff like Mr. Shkipin "may not recover damages" for a Section 1 violation "merely by showing injury causally linked to an illegal presence in the market." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (cleaned up). Instead, the plaintiff must "prove the existence of *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.*

To establish antitrust injury in this case, Mr. Shkipin must allege that *he* was injured by HomeLight's agreements with agents, and that his injury "flows from acts harmful to *consumers*." *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022) (quotations omitted and emphasis added). Those injured consumers might be homebuyers and sellers—a referral

7

platform's "ultimate" consumers—and the countercomplaint indeed suggests that HomeLight's referral agreements harm these buyers and sellers by increasing the commissions they pay. Those injured consumers might also be real estate agents—a referral platform's "intermediate" consumers—who receive a smaller share of their commissions because of HomeLight's agreements. *See id.* at 833. But Mr. Shkipin does not allege that he or his business have been harmed by injuries to consumers at either level—to shoppers or to agents. Instead, he identifies HomeOpenly's injury as "lost advertising revenues and profits, the artificial suppression of the value of HomeOpenly's legitimate advertising business, and suppressed network effects." These injuries stem from decisions by shoppers and agents not to use or advertise on HomeOpenly, decisions which are not alleged to result from any injury that shoppers or agents have themselves suffered because of HomeLight's agreements. If anything, higher commissions and mandatory fees would seem to make both shoppers and agents *more* interested in a service like HomeOpenly that does not charge referral fees and where agents can compete on the basis of price.

For this reason, even if Mr. Shkipin had sufficiently alleged that HomeLight's agreements can be attacked under Section 1 (which he has not), his Section 1 claim would still have to be dismissed because he has not alleged that his injuries flowed from HomeLight's anticompetitive conduct rather than from its competition with HomeOpenly.

### B. Mr. Shkipin Fails To Allege that HomeLight Has Attempted To Monopolize a Relevant Market.

Mr. Shkipin's Count 2 alleges that HomeLight attempted to monopolize trade in violation of Section 2 of the Sherman Act. This requires proving: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power," which requires courts "to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Mr. Shkipin's countercomplaint fails to plead any of the required elements of an attempted monopolization claim. First, it discusses HomeLight's formation of a "network" of "partner agents" through its referral agreement. As discussed with respect to the Section 1 claims, though,

8

it does not explain how these agreements are anticompetitive or predatory. Indeed, Mr. Shkipin recognizes that HomeLight partner agents remain free to work independently or with other referral fee networks, including HomeOpenly. The countercomplaint also makes conclusory allegations of "tortious conduct designed to undermine open markets" but does not elaborate or plausibly explain why the unidentified conduct represents an attempt to monopolize any market.

Second, the countercomplaint does not plead facts showing that HomeLight had specific intent to monopolize—that is, the intent not merely to grow its business (potentially at competitors' expense), but to control prices or unreasonably destroy competition.

Finally, the countercomplaint does not plead facts plausibly showing that HomeLight could come dangerously close to achieving monopoly power. Monopoly power is the ability "to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). The countercomplaint does not allege that HomeLight has either form of power. To the contrary, it acknowledges that there are at least fourteen other referral fee networks competing with HomeLight, "several" of which have "gained an unprecedented scale" over just "the last five to seven years." This is hardly the hallmark of a market where competition is excluded, let alone by HomeLight. The countercomplaint also does not offer indirect evidence of monopoly power in the form of market share: Mr. Shkipin does not precisely set out a relevant product or geographic market, and as a result, he does not attempt to assign a share to HomeLight. This failure to plead market power is separately fatal to Section 2 claims of actual monopolization.

### C. Mr. Shkipin Fails To Allege that HomeLight Has Made False Statements that Have Materially Deceived Their Audience and Injured HomeOpenly.

Count 3 alleges that HomeLight has falsely advertised its services in violation of Section 43(a) of the Lanham Act. A false advertising claim under the Lanham Act has five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

9

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). Mr. Shkipin identifies several allegedly false statements but does not establish these five elements for any of them.

### 1. Mr. Shkipin Does Not Allege an Injury that Establishes Standing Under the Lanham Act.

The Lanham Act does not allow "all factually injured plaintiffs to recover" for false advertising. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Instead, "the zone-of-interests test and the proximate-cause requirement" establish "limits on who may sue." *Id.* at 134. For a plaintiff "to come within the zone of interests," consumer injury is not enough: There must be "injury to a commercial interest in reputation or sales." *Id.* at 131–32. And for this injury to be proximately caused by the challenged statement, the injury must "flow[] directly from the deception wrought by the defendant's advertising." *Id.* at 133.

Proximate causation can be shown when the plaintiff and defendant are direct competitors and consumers "withhold trade from the plaintiff" as a result of defendant's deception. *Lexmark*, 572 U.S. at 133. In fact, when plaintiff and defendant are direct competitors, there is "a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011). Although they do not benefit from a presumption of injury and causation, plaintiffs who are not direct competitors can nonetheless sometimes establish that they have experienced commercial injury proximately caused by a defendant's statement. One way this can be shown is if the statements at issue disparage the plaintiff: "When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Lexmark*, 572 U.S. at 138. Proximate cause can also be shown when the allegedly false advertising "necessarily injure[s]" the plaintiff's business, for example if there is "something very close to a 1:1 relationship" between the transactions diverted to the defendant and the plaintiff's losses. *Id.* at 139.

Here, Mr. Shkipin alleges that "HomeLight's false and misleading statements have caused … HomeOpenly to lose network effects and ad revenues, and also to lose goodwill value associated with its 100% free services to real estate agents and consumers." These are commercial injuries, but the pleaded facts do not establish a sufficiently direct chain of causation between

HomeLight's statements and the commercial harm alleged. To start, none of the statements are alleged to disparage or even refer to HomeOpenly, so Mr. Shkipin cannot plausibly allege any reputational harm.[2] To establish that HomeLight proximately caused HomeOpenly to suffer a loss of sales, Mr. Shkipin would need to show how deceptive statements about HomeLight directed at shoppers on HomeLight's own website necessarily caused advertisers not to buy ads from HomeOpenly. Even assuming that there is a direct relationship between the number of shoppers who use or visit HomeOpenly and its ability to sell ads, and that HomeLight's deceptive statements resulted in some reduction in the number of shoppers visiting HomeOpenly's website, this connection is too attenuated to establish proximate cause. This is especially true given the countercomplaint's other plausible explanation for why online home shoppers might find HomeLight's website but not HomeOpenly's: HomeLight's heavy spending on various forms of online and TV advertising that Mr. Shkipin characterizes as "highly effective."

### 2. Mr. Shkipin Does Not Plead that Any Specific Statements by HomeLight Violate the Lanham Act

Separately, Mr. Shkipin's countercomplaint fails to establish that any of the HomeLight statements he deems false or misleading violate the Lanham Act's false advertising provisions.

First, Mr. Shkipin challenges HomeLight's alleged statement: "Our service is 100% free, with no catch. Agents don't pay us to be listed, so you get the best match." The countercomplaint concedes that agents do not pay to be listed but argues that the failure to mention that partner agents do pay referral fees is a "deceptive omission." Whether or not HomeLight's service is fairly characterized as "100% free" to consumers notwithstanding the alleged effect of the referral fee on the commissions consumers pay to their agents, the countercomplaint does not plausibly plead that the omission deceived a substantial segment of HomeLight's audience. To the contrary, Exhibit C to Mr. Shkipin's countercomplaint is a HomeLight webpage specifying that "HomeLight receives a portion of the agent's commission as a referral fee." Given HomeLight's explanation on its own

---

[2] To the extent Mr. Shkipin contends that HomeOpenly would benefit from additional "goodwill" if HomeLight were to change the manner in which it characterizes its own services, that connection is too attenuated to satisfy the proximate cause requirement.

11

website of its referral fee model, its failure to acknowledge that model in other statements cannot be deemed, on the basis of the facts pleaded here, to have materially deceived a substantial segment of its audience.

Second, Mr. Shkipin challenges HomeLight's alleged statement: "HomeLight is operated in compliance with all state and federal housing laws." On the facts pleaded in Mr. Shkipin's countercomplaint, this statement is not actionable because it includes a legal conclusion rather than a statement of fact. "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact," and therefore "not generally actionable under the Lanham Act." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

Third, Mr. Shkipin challenges HomeLight's alleged statement: "The agents we recommend on HomeLight typically can save you thousands on your home purchase." Because it says that agents "typically can" rather than "will" save customers money, this statement is better characterized, on the facts pleaded here, as a general representation of the ability of agents listed on HomeLight rather than a promise of specific results. While "a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product" may support a false advertising claim, "a general, subjective claim about a product is non-actionable puffery." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (cleaned up).

Fourth, Mr. Shkipin challenges HomeLight's alleged statement: "We've designed a solution that allows you to sort through over 2 million agents from all of the top real estate brokerages in order to find the perfect one for you." The number of agents that HomeLight's platform examines is a statement of fact, but the countercomplaint does not plead facts contradicting this number. Characterizing HomeLight's matches as "the perfect one for you" is, on the facts pleaded here, subjective non-actionable puffery. *See Newcal Indus.*, 513 F.3d at 1053.

Fifth, Mr. Shkipin challenges HomeLight's alleged statement: "HomeLight matches you with the top listing agents in your local neighborhood. We do this by analyzing over 15 million home transactions since 2009 to produce updated agent rankings based on objective data. Agents

1 never pay us to be listed on our site, so we can be 100% unbiased." The number of transactions
2 HomeLight has analyzed is a factual statement, but the countercomplaint does not attempt to
3 contradict this number. Characterizing HomeLight's services as "100% free" is discussed above,
4 and "top listing agents" and "unbiased" are, on the facts pleaded here, puffery.

5      Finally, Mr. Shkipin challenges HomeLight's alleged statement: "we look through our
6 database of over 18 million verified real estate transactions (collected from over 2 million agents)
7 and generate unbiased recommendations." As with the other similar claims, the countercomplaint
8 does not plead facts contradicting the number of transactions or agents HomeLight has analyzed.
9 Characterizing the resulting recommendations as "unbiased" is puffery rather than a statement of
10 fact, because the countercomplaint does not plead facts suggesting that this characterization is
11 false or misleading. *See McLaughlin v. HomeLight, Inc.*, No. 21-CV-05379, 2021 WL 5986913, at
12 *4 (C.D. Cal. Sept. 17, 2021) (dismissing Lanham Act false advertising claims against HomeLight
13 over its representations that it produces "data-driven" and "unbiased" lists of "top" agents).

14      In sum, the countercomplaint does not plead facts establishing the elements of a Lanham
15 Act false advertising claim for any of the statements by HomeLight that it identifies.

### D. California Unfair Competition Law

17 Count 4 alleges that the "unlawful conduct" identified in first three counts also violates
18 California's Unfair Competition Law. Because the countercomplaint does not adequately plead
19 these other violations, it also fails to state a claim under the UCL.

20                                 \*      \*      \*

21 For the foregoing reasons, Mr. Shkipin's countercomplaint fails to state legal claims upon
22 which the Court can grant relief, even after accepting all of the factual allegations as true and
23 construing the pleading in his favor. The countercomplaint is therefore dismissed under Rule
24 12(b)(6).

### IV. Leave to Amend

26 Rule 15(a) specifies that leave to amend "shall be freely given when justice so requires."
27 The Ninth Circuit has directed that "this policy is to be applied with extreme liberality." *Morongo*
28 *Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). There is no evidence that

13

Mr. Shkipin has acted in bad faith or is seeking undue delay in the resolution of this action. And providing Mr. Shkipin—who is representing himself—with one more opportunity to amend his pleadings will not unduly prejudice HomeLight. Mr. Shkipin is therefore granted leave to amend his countercomplaint, but he should do so only if he is able to add specific allegations of fact that address the shortcomings in his original countercomplaint.

## V. Federal Pro Bono Project Referral

On Nov. 28, 2022, the Court referred Mr. Shkipin to the Federal Pro Bono Project for representation in a settlement conference and related discovery. On Sept. 6, 2023, the parties held a settlement conference but did not settle. No further settlement proceedings are scheduled. Accordingly, the limited purpose referral to the Federal Pro Bono Project is withdrawn. Mr. Shkipin is reminded that he is not permitted to represent defendant HomeOpenly, Inc. in any future proceedings in this case because he is not a licensed attorney. *See* Civil Local Rule 3-9(b).

## VI. Case Schedule

On May 15, 2022, the Court granted HomeLight's unopposed motion to establish a case schedule with deadlines determined from the date of a decision on HomeLight's motion to dismiss Mr. Shkipin's countercomplaint. The case schedule will therefore be as follows:

- Close of fact discovery:                Dec. 15, 2023
- Opening expert reports:                 Jan. 5, 2024
- Rebuttal expert reports:                Feb. 2, 2024
- Close of expert discovery:              Mar. 1, 2024
- Deadline to file dispositive motions:   Mar. 15, 2024
- Last day to hear dispositive motions:   Apr. 18, 2024
- Pretrial conference:                    Jun. 4, 2024
- Jury trial begins:                      Jun. 17, 2024

## VII. Conclusion

Because Mr. Shkipin has not adequately pleaded violations of the Sherman Act, the Lanham Act, or California's Unfair Competition Law, his countercomplaint is dismissed. Any amended countercomplaint must be filed within 21 days of this Order. The limited purpose referral to the Federal Pro Bono Project is withdrawn.

14

**IT IS SO ORDERED.**

Dated: September 27, 2023

_____
P. CASEY PITTS
United States District Judge