1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

HOMELIGHT, INC.,

Case No.  22-cv-03119-PCP

8

Plaintiff,

9

v.

**ORDER GRANTING MOTION TO DISMISS**

10

DMITRY SHKIPIN, et al.,

Re: Dkt. No. 138

11

Defendants.

12

13          After this Court dismissed his initial countercomplaint with leave to amend, Dkt. No. 123,

14   2023 WL 6284738, defendant/counter-plaintiff Dmitry Shkipin filed an amended

15   countercomplaint, which plaintiff/counter-defendant HomeLight, Inc. subsequently moved to

16   dismiss. Even after amendment, Mr. Shkipin's countercomplaint fails to establish that he has

17   standing to bring his Sherman Act, Lanham Act, or California Unfair Competition Law

18   counterclaims. HomeLight's motion to dismiss is therefore granted.

19          The Court assumes familiarity with its prior order and applies the same legal standard in

20   considering HomeLight's motion to dismiss the amended countercomplaint under Rule 12(b)(6).

21          ***Sherman Act Claims.*** The first three claims in the amended countercomplaint (ACC) are

22   for antitrust violations. Count 1 is for a per se violation of Section 1 of the Sherman Act; Count 2

23   is for a Section 1 violation under the rule of reason; and Count 3 is for attempted monopolization

24   in violation of Section 2 of the Sherman Act. For Mr. Shkipin to bring a claim it is not enough for

25   him to allege conduct that violates the Sherman Act; he must also adequately allege that *he* has

26   suffered the type of injury the law aims to prevent—in other words, that he has antitrust standing.

27   A competitor like Mr. Shkipin "has standing to assert a Sherman Act claim only when the claimed

28   injury flows from acts harmful to consumers." *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th

824, 832 (9th Cir. 2022) (cleaned up). As the Court explained in its previous dismissal:

> Mr. Shkipin does not allege that he or his business have been harmed by injuries … to shoppers or to agents. Instead, he identifies HomeOpenly's injury as "lost advertising revenues and profits, the artificial suppression of the value of HomeOpenly's legitimate advertising business, and suppressed network effects." These injuries stem from decisions by shoppers and agents not to use or advertise on HomeOpenly, decisions which are not alleged to result from any injury that shoppers or agents have themselves suffered because of HomeLight's agreements. If anything, higher commissions and mandatory fees would seem to make both shoppers and agents *more* interested in a service like HomeOpenly that does not charge referral fees and where agents can compete on the basis of price.

> For this reason, even if Mr. Shkipin had sufficiently alleged that HomeLight's agreements can be attacked under Section 1 …, his Section 1 claim would still have to be dismissed because he has not alleged that his injuries flowed from HomeLight's anticompetitive conduct rather than from its competition with HomeOpenly.

Order, Dkt. No. 123, at 8; 2023 WL 6284738, at *5.

Mr. Shkipin's amendments do not alter this conclusion. As before, the alleged injuries focus on lost advertising revenues, network effects, and customer goodwill. ACC ¶¶ 61–75. While the amended counterclaim expounds on these injuries and explains in greater detail than the original pleading how these injuries were allegedly caused, it does not rectify the fundamental problem with the original counterclaim: These are not the kinds of injuries the Sherman Act is designed to prevent. As the "Antitrust Injury" section of the amended counterclaim explains, all of the alleged injuries stem from an alleged loss of network effects—the value created to the platform from the number of home buyers and real estate brokers that participate on the respective sides of the network. But even assuming any of HomeLight's alleged conduct harmed consumers on either side of this network (i.e., home buyers or brokers), the counterclaim still offers no plausible theory for why that injury would cause the injured parties not to use HomeOpenly. As the Court previously explained, if HomeLight's practices were harming them, shoppers or agents would seem to be *more* likely, if anything, to look for alternatives such as HomeOpenly.

Because the amended counterclaim still fails to establish that Mr. Shkipin has standing to pursue claims under the Sherman Act, Counts 1–3 are dismissed.

1   ***Lanham Act Claims*.** Mr. Shkipin's fourth claim is for false advertising in violation of the

2   Lanham Act. This claim also fails for lack of standing. The Lanham Act does not allow "all

3   factually injured plaintiffs to recover" for false advertising. *Lexmark Int'l, Inc. v. Static Control*

4   *Components, Inc.*, 572 U.S. 118, 129 (2014). Instead, "the zone-of-interests test and the

5   proximate-cause requirement" establish "limits on who may sue." *Id.* at 134. For a plaintiff "to

6   come within the zone of interests," consumer injury is not enough: There must be "injury to a

7   commercial interest in reputation or sales." *Id.* at 131–32. And for this injury to be proximately

8   caused by the challenged statement, the injury must "flow[ ] directly from the deception wrought

9   by the defendant's advertising." *Id.* at 133. Applying this standard the Court previously concluded:

10
11              Mr. Shkipin alleges that "HomeLight's false and misleading
                statements have caused … HomeOpenly to lose network effects and
12              ad revenues, and also to lose goodwill value associated with its 100%
                free services to real estate agents and consumers." These are
13              commercial injuries, but the pleaded facts do not establish a
                sufficiently direct chain of causation between HomeLight's
14              statements and the commercial harm alleged. To start, none of the
                statements are alleged to disparage or even refer to HomeOpenly, so
15              Mr. Shkipin cannot plausibly allege any reputational harm. To
                establish that HomeLight proximately caused HomeOpenly to suffer
16              a loss of sales, Mr. Shkipin would need to show how deceptive
                statements about HomeLight directed at shoppers on HomeLight's
17              own website necessarily caused advertisers not to buy ads from
                HomeOpenly. Even assuming that there is a direct relationship
18              between the number of shoppers who use or visit HomeOpenly and
                its ability to sell ads, and that HomeLight's deceptive statements
19              resulted in some reduction in the number of shoppers visiting
                HomeOpenly's website, this connection is too attenuated to establish
20              proximate cause. This is especially true given the countercomplaint's
                other plausible explanation for why online home shoppers might find
21              HomeLight's website but not HomeOpenly's: HomeLight's heavy
                spending on various forms of online and TV advertising that Mr.
22              Shkipin characterizes as "highly effective."
23

24   Order at 10–11; 2023 WL 6284738, at *6.

25          In his amended countercomplaint Mr. Shkipin has expended his allegations regarding

26   "False Advertising Injury." ACC ¶¶ 99–114. He now specifically alleges that "HomeLight

27   proximately caused HomeOpenly to suffer a loss of sales because deceptive statements about

28   HomeLight directed at shoppers on HomeLight's own website necessarily caused loss of network

*United States District Court*
*Northern District of California*

3

United States District Court
Northern District of California

1   effects on HomeOpenly platform." ACC ¶ 109. But this new allegation is still exactly the kind of

2   causation and injury that the Court previously concluded was "too attenuated" to establish

3   proximate cause. Accordingly, because Mr. Shkipin has not adequately pleaded the injury required

4   to state a claim, his Lanham Act claim is also dismissed.

5         ***California Unfair Competition Law.*** Mr. Shkipin's final claim is for a violation of

6   California's Unfair Competition Law. As before, he primarily makes this claim under the UCL's

7   "unlawful" prong. But unlike in his original countercomplaint, in which the unlawful conduct

8   identified was the same conduct underlying the other causes of action in the complaint, Mr.

9   Shkipin now premises his UCL claim on HomeLight's alleged violation of the Real Estate

10   Settlement Procedures Act (RESPA). *See* ACC ¶ 218.

11         Standing to bring a UCL claim is limited to plaintiffs who have "suffered injury in fact"

12   and have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code

13   § 17204. The California Supreme Court summarized this requirement as follows:

14

15               [Section 17204] requires that a plaintiff have "lost money or property"
               to have standing to sue. The plain import of this is that a plaintiff now

16               must demonstrate some form of economic injury. … There are
               innumerable ways in which economic injury from unfair competition

17               may be shown. A plaintiff may (1) surrender in a transaction more, or
               acquire in a transaction less, than he or she otherwise would have;

18               (2) have a present or future property interest diminished; (3) be
               deprived of money or property to which he or she has a cognizable

19               claim; or (4) be required to enter into a transaction, costing money or
               property, that would otherwise have been unnecessary.

20

21   *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (cleaned up). In addition to

22   establishing an economic injury, a UCL plaintiff must also establish that that injury came "as a

23   result of" the UCL violation. Cal. Bus. & Prof. Code § 17204. "The phrase 'as a result of' in its

24   plain and ordinary sense means 'caused by' and requires a showing of a causal connection or

25   reliance on the alleged misrepresentation." *Kwikset*, 51 Cal. 4th at 323 (cleaned up).

26         Here, Mr. Shkipin asserts that his "Unfair Competition Injury" includes a "diminished"

27   "market value" of the HomeOpenly platform and that HomeOpenly "was deprived and will

28   continue to be deprived of lawful advertising revenue." ACC ¶¶ 125–28. These allegations,

4

United States District Court
Northern District of California

1    without more, border on conclusory. But even assuming Mr. Shkipin was deprived of revenue

2    which he otherwise would have received and that the value of his property was diminished, the

3    countercomplaint fails to establish a causal connection between the allegedly unlawful conduct

4    underlying the UCL claim—that HomeLight received illegal kickbacks in violation of RESPA—

5    and the injuries Mr. Shkipin claims he suffered. Even assuming it were illegal for HomeLight to

6    charge commissions to agents who accept its referrals, Mr. Shkipin's allegations that *he* was

7    injured by HomeLight charging commissions to third party agents are implausible. He does not

8    allege, for example, that he ever paid such a commission, either directly or indirectly. And, as

9    discussed above, the alleged fact that HomeLight charged its agents commissions would seem to

10    *increase* agents' incentive to use (and advertise on) a platform like HomeOpenly that does not.

11    The counterclaim also invokes the "fraudulent" prong of the UCL. It states in relevant

12    part: "HomeLight's actions constitute a 'fraudulent' practice because it is a 'sham' real estate

13    brokerage that has misrepresented itself as a two-sided marketplace. This is a highly deceptive

14    proposition riddled with false advertising, hidden and unlawful kickbacks, steering, pay-to-play,

15    and collusion which is likely to mislead an ordinary consumer." ACC ¶ 221. Mr. Shkipin does not

16    separately elaborate on his claim under the fraudulent prong of the UCL, but these allegations

17    overlap substantially with his Lanham Act claims. For the same reasons Mr. Shkipin's factual

18    allegations are too attenuated to adequately plead that HomeLight's conduct caused him injury

19    under the Lanham Act, however, the allegations are also too attenuated to show that HomeLight's

20    conduct *caused* him economic injury sufficient to warrant a claim under the UCL's fraudulent

21    prong (and his complaint does not suggest that his UCL fraudulent prong claim is based on a

22    theory of reliance on HomeLight's statements). Because Mr. Shkipin has not adequately pleaded

23    that he suffered an injury plausibly caused by HomeLight's alleged unlawful or fraudulent

24    conduct, his claims under those prongs of the UCL are dismissed.

25    Finally, the countercomplaint also invokes the "unfair" prong of the UCL. But because this

26    claim is based on the same alleged conduct underlying the dismissed unlawful and fraudulent

27    prong claims, this claim is similarly dismissed. *See, e.g., Hadley v. Kellogg Sales Co.*, 243

28    F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) ("[C]ourts in this district have held that where the

unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.").

In sum, all five of the claims in the amended countercomplaint are dismissed. Because Mr. Shkipin has already amended his countercomplaint once following dismissal by this Court, further leave to amend would be futile. This dismissal is therefore without leave to amend.

The stay on discovery in this case is lifted, and the Court sets the following revised case schedule:

- Fact discovery cutoff:              May 15, 2024
- Opening expert reports:         June 5, 2024
- Rebuttal expert reports:          July 2, 2024
- Expert discovery cutoff:          Aug. 1, 2024
- Filing of dispositive motions:   Aug. 15, 2024
- Pretrial conference:                 Dec. 17, 2024
- Jury trial:                               Jan. 13, 2025

This schedule may be modified for good cause. The parties may request modification by stipulation or by filing an administrative motion pursuant to Civil Local Rule 7-11.

**IT IS SO ORDERED.**

Dated: March 5, 2024

P. Casey Pitts
United States District Judge